UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PATRICIA COFFMAN,

    Plaintiff,

v.                                               Case No. _____

EQUIFAX INFORMATION
SERVICES, LLC and EXPERIAN
INFORMATION SOLUTIONS, INC.,

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Patricia Coffman sues Defendants Equifax Information Services, LLC and Experian Information Solutions, Inc. and alleges:

### Introduction

1. This is an action alleging Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA) by selling credit reports inaccurately reporting Ms. Coffman as deceased.

2. The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

3. Plaintiff seeks entry of judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

**Jurisdiction, Venue and Parties**

4. This Court has original jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5. Personal jurisdiction exists over Defendants as each has the necessary minimum contacts with the State of Tennessee, this suit arises out of Defendants' specific conduct with Plaintiff in Tennessee, and Plaintiff was injured in Tennessee.

6. Venue is appropriate in the United States District Court for the Middle District of Tennessee, Nashville Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiff's claims occurred in Davidson County, Tennessee.

7. Plaintiff is a natural person residing in Davidson County, Tennessee.

8. At all times relevant, Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency that regularly conducts business in the Middle District of Tennessee and which has a principal place of business located at 815 Gate Drive, Suite 102, Mount Laurel, New Jersey 08054.

10. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that regularly conducts business in the Middle District of Tennessee and which has a principal place of business located at 4 Gatehall Drive, 3rd Floor, Parsippany, New Jersey 07054.

11. At all times relevant, Defendants are each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

**Factual Allegations**

12. Since at least September 2018, Defendants Equifax and Experian had marked Plaintiff as "deceased" on her Equifax and Experian credit reports.

13. Plaintiff is not deceased.

14. Defendants Equifax and Experian did not calculate or provide any credit score for Plaintiff, even though they sold reports about her to third parties marking her as "deceased".

15. Plaintiff received an adverse interest rate on a personal loan, and was denied other credit opportunities because Defendants Equifax and Experian sold a credit report marking Plaintiff as deceased.

16. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, and emotional distress.

17. The FCRA requires that Defendants Equifax and Experian must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

18. The FCRA requires that Defendants Equifax and Experian must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

19. Defendants Equifax and Experian place a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

20. Defendants Equifax and Experian do not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

21. Defendants Equifax and Experian do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

22. Indeed, Defendants Equifax and Experian employ no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

23. Even in instances where other data on the face of the consumer's report indicates that she is not deceased, Defendants Equifax and Experian employ no procedures which assure that a consumer with a "deceased" mark on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

24. Even in instances where the purportedly deceased consumer communicates directly with Defendants Equifax and Experian, Defendants Equifax and Experian employed no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

25. Once a "deceased" mark is placed upon a consumer's report, Defendants Equifax and Experian will not calculate and will not provide a credit score for that consumer.

26. Nevertheless, Defendants Equifax and Experian routinely sell to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

27. Upon Defendants Equifax and Experian's reports with a "deceased" mark sold to third parties, Defendants Equifax and Experian never calculate or provide a credit score for that consumer.

28. Defendants Equifax and Experian know that many third-party credit issuers require a credit score in order to process a given credit application.

29. Defendants Equifax and Experian know that consumers without credit scores are unable to secure any credit from most credit issuers.

30. Defendants Equifax and Experian know that living consumers are turned down for credit specifically because Defendants are reporting them as "deceased" and without a credit score.

31. Defendants Equifax and Experian have been put on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Defendants Equifax and Experian are reporting them as "deceased" and without a credit score.

32. Defendants Equifax and Experian have received and documented thousands of disputes from consumers complaining that their Experian and Equifax credit reports have them erroneously marked as "deceased."

33. Defendants Equifax and Experian know that thousands of consumers are erroneously marked as "deceased" on their Experian and Equifax credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Death Master File and are, in fact, alive.

5

34. Nevertheless, Defendants Equifax and Experian employ no procedures which assure that a consumer marked as "deceased" on Defendants Equifax and Experian's reports are, in fact, deceased.

35. Even consumers who dispute the erroneous "deceased" status on their Experian and Equifax credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" code in the first instance decides to change the code.

36. Defendants Equifax and Experian have no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, which reinvestigation was triggered by a consumer dispute.

37. Nor do Defendants Equifax and Experian employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

38. For years after a consumer's actual death, Defendants Equifax and Experian will continue to sell for profit credit reports about that consumer.

39. Defendants Equifax and Experian will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Experian or Equifax – meaning that nobody is continuing to buy those reports.

40. Defendants Equifax and Experian charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

41. Defendants Equifax and Experian profit from the sale of reports on the deceased.

42. Defendants Equifax and Experian have in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

43. Defendants Equifax and Experian know that truly deceased consumers do not apply for credit.

44. Defendants Equifax and Experian know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Experian and Equifax to be a common and major source of identity theft.

45. Defendants Equifax and Experian know that identity theft and credit fraud are serious and widespread problems in our society.

46. Defendants Equifax and Experian warn the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

47. Defendants Equifax and Experian have no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

48. Indeed, Defendants Equifax and Experian sell reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

49. For consumers who are deceased, there exists no permissible purpose under the FCRA for Defendants Equifax and Experian to ever sell their credit reports, absent a court order.

50. Defendants Equifax and Experian know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

51. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

52. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## COUNT I
### Violation of the FCRA by Equifax

53. Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty-two (52) as if fully set forth herein.

54. At all times pertinent hereto, Defendant Equifax Information Services, LLC was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

55. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

56. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

57. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant Equifax Information Services, LLC is liable to the Plaintiff for willfully and negligently failing to comply

with the requirements imposed on a consumer reporting agency reporting information pursuant to 15 U.S.C. § 1681e(b).

## COUNT II
## Violation of the FCRA against Experian

58. Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty-two (52) as if fully set forth herein.

59. At all times pertinent hereto, Defendant Experian Information Solutions, Inc. was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

60. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

61. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

62. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant Experian Information Solutions, Inc. is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency reporting information pursuant to 15 U.S.C. § 1681e(b).

## JURY TRIAL DEMAND

63. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendants, based on the following requested relief:

(a) Actual damages;

(b) Statutory damages;

(c) Punitive damages;

(d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

(e) Such other and further relief as may be necessary, just and proper.

Respectfully submitted,

*/s/Frank H. Kerney, III, Esquire*
Frank H. Kerney, III, Esquire
Tennessee Bar #: 035859
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
FKerney@ForThePeople.com
CheyenneReed@ForThePeople.com
*Counsel for Plaintiff*